UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------x
UNITED STATES OF AMERICA,

               Plaintiff,

     -against-

GERSHON TANNENBAUM, SARAH TANNENBAUM,
M&T MORTGAGE CORPORATION, assignee to Greater
New York Savings Bank, JPMORGAN CHASE, successor
to Chemical Bank, DAVID SHELDON, NEW YORK
STATE DEPARTMENT OF TAXATION & FINANCE,
UNITED STATES SECURITIES AND EXCHANGE
COMMISSION, THE BANK OF NEW YORK MELLON,
in its capacity as Collateral Agent and Custodian, CITY OF
NEW YORK PARKING VIOLATIONS BUREAU, and
CITY OF NEW YORK DEPARTMENT OF
ENVIRONMENTAL PROTECTION,

               Defendants.
-----------------------------------------------------------------------------x

**MEMORANDUM &
ORDER**
12-CV-5305 (SLT) (RML)

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ AUG 1 1 2016 ★

BROOKLYN OFFICE

**TOWNES, United States District Judge:**

     Plaintiff, the United States of America, brings this action under 26 U.S.C. §§ 7402(a) and

7403 to satisfy Defendant Gershon Tannenbaum's outstanding federal tax liabilities. Plaintiff

seeks a Court Order that it has valid tax and judgment liens on all of Mr. Tannenbaum's

property, and that the liens can be enforced by foreclosing on the property located at 927 51st

Street, Brooklyn, New York (the "Home"), selling it, and splitting the sales proceeds equally

between Mr. Tannebaum's creditors and the co-owner of the Home, Mr. Tannenbaum's wife,

Defendant Sarah Tannenbaum.

     Currently before the Court are Plaintiff's motion for summary judgment, Sarah

Tannenbaum's opposition and cross-motion for summary judgment, and a cross-motion for

summary judgment from Defendant David Sheldon, a private citizen who secured a money

judgment against Mr. Tannenbaum and other non-parties in a civil suit in the District of Kansas.

For the reasons set forth below, Plaintiff's summary judgment motion is granted in its entirety and Sarah Tannenbaum's and David Sheldon's cross-motions for summary judgment are denied.

## UNCONTESTED FACTS

The facts listed below are uncontested. Gershon and Sarah Tannenbaum have owned the Home, which is located in Kings County, since 1977. (U.S.'s L.R. 56.1(a) Statement ("U.S. Moving L.R. 56.1(a) Statement") ¶ 14, Ex. C, ECF No. 40-1.) They were married when they purchased the Home. (*Id.*) From 1987 through 1996 and 2002 through 2004, Gershon Tannenbaum was delinquent in paying his federal income taxes. (U.S. Moving L.R. 56.1(a) Statement ¶¶ 1, 3; Aff. of Debt ¶¶ 3, 4, ECF No. 40-2.) He continued to be delinquent despite being notified by Plaintiff of his unpaid taxes, penalties, and interest on May 19, June 16, and June 30, 1997, February 9, 1998, May 9, 2005, and June 26 and July 3, 2006. (U.S. Moving L.R. 56.1(a) Statement ¶¶ 4, 5; Aff. of Debt ¶¶ 5, 6.)

On August 4, 1995, Gershon and Sarah Tannenbaum were indicted for conspiracy to defraud or to commit an offense against the United States under 18 U.S.C. § 371, and for fraud and false statements under § 7206 of the Internal Revenue Code ("IRC").[1] (Indictment, *United States v. Tannenbaum*, 95-cr-695 (E.D.N.Y.); Memo. of David Sheldon in Opp. to Sarah Tannenbaum's Cross-Mot. for Summ. J. and in Support of David Sheldon's Cross-Mot. for Summ. J., Ex. R and S.) Gershon Tannenbaum subsequently pleaded guilty to the charge under 18 U.S.C. § 371. (95-cr-695, ECF Nos. 38, 42, 43.) The charge against him under 26 U.S.C. § 7206 was dropped. He was sentenced to 12 months and one day in jail, two years of supervised release, and a $25,000 fine. (*Id.* at ECF Nos. 81, 82.) A condition of his supervised release was that he had to "comply with any final civil judgment for such further amounts, if any,

---

[1] The Court has gathered these facts solely from the docket entries in *United States v. Tannenbaum*, 95-cr-695 (E.D.N.Y.).

of back taxes owed to the IRS." (*Id.* at ECF No. 82) By the time of his sentencing in December 1997, Plaintiff had three assessments notifying him of his outstanding tax liabilities. His prison term was scheduled to begin in January 1998. (*Id.*) Sarah Tannenbaum entered into a deferred prosecution agreement with the United States, and all charges against her were dropped. (95-cr-695, ECF Nos. 44, 87.)

On March 4, 1998, Plaintiff filed Notices of Federal Tax Liens ("NFTLs") against Gershon Tannenbaum with the City of New York Register in Kings County, New York ("Kings County Register's office"), for the tax years ending December 31, 1987, through December 31, 1995. (U.S. Moving L. R. 56.1(a) Statement ¶ 6; Aff. of Debt ¶ 7.) These NFTLs were refiled on May 24, 2007. (*Id.*) On April 14, 1998, another NFTL was filed against him with the Kings County Register's office, and subsequently refiled on May 24, 2007, for the tax year ending December 31, 1996. (U.S. Moving L. R. 56.1(a) Statement ¶ 7; Aff. of Debt ¶ 8.)

In January 2000, Mr. Tannenbaum's mother bequeathed her condominium (the "Condo"), upon her death and the death of her husband, to Sarah Tannenbaum and Mr. Tannenbaum's sister. (U.S.' Resp. to Def. Sarah Tannenbaum's R. 56.1 Statement and Statement of Additional Undisputed Material Facts ("U.S. Resp. to Sarah Tannenbaum's R. 56.1 Statement") § II, ¶¶ 1, 2, ECF No. 45-1; Decl. of Stephanie Weiner Chernoff in Further Support of the U. S.' Mot. for Summ. J. ("Chernoff Reply Decl.") Ex. B at 3, ECF No. 45-2.) On December 18, 2002, after Gershon Tannenbaum's mother had died, he and his sister, in each sibling's capacity as "co-Executor" of their mother's will, conveyed title of the Condo to Sarah Tannenbaum and Mr. Tannenbaum's sister. (U.S. Resp. to Sarah Tannenbaum's R. 56.1 Statement § II ¶ 1, 2; Chernoff Reply Decl., Ex. A.) The Condo is located "less than a mile" from the Home. (*Id.* at § II ¶ 4.)

Defendant David Sheldon filed suit in the District of Kansas against several defendants, including Mr. Tannenbaum ("Kansas Defendants"). Although Sheldon has not specified when he filed the lawsuit, based on publicly-available information, it existed in 1998 and he alleged violations of federal and state securities laws. *Sheldon v. Vermonty*, 31 F.Supp.2d 1287 (D. Kansas 1998). Sheldon retained an attorney to represent him on a contingency basis; Sheldon also agreed to pay the attorney "50% of any judgment...." (David Sheldon's L.R. 56.1(a) Statement, Ex. B at ¶¶ 2, 4, ECF No. 41.) Pursuant to a jury verdict for Sheldon, on November 8, 2002, the District of Kansas issued a Judgment awarding him over $38,722.89 in compensatory damages, $150,000 in punitive damages, $186,000 in attorneys' fees, $12,000 in costs, and other amounts, to be paid jointly and severally by the liable Kansas Defendants, which included Mr. Tannenbaum. *Sheldon v. Vermonty*, 237 F.Supp.2d 1270, 1283 (D. Kansas 2002) (David Sheldon's L. R. 56.1(a) Statement, Ex. C at Judgment in a Civil Case.) The District of Kansas subsequently issued three amended judgments (collectively with the first Judgement, the "Kansas Judgments"), all of which are also based on "joint and several liability." (David Sheldon's L. R. 56.1(a) Statement ¶ 7, Ex. C at Amended Judgment in a Civil Case, Amendment to Amended Judgment in a Civil Case, Second Amendment to Amended Judgment in a Civil Case.)

On January 7, 2003, Sheldon filed an Abstract of Judgment of the November 8, 2002 Kansas Judgment with the Kings County Clerk's office. (David Sheldon's L. R. 56.1(a) Statement ¶ 6, Ex. I.) He subsequently filed an Abstract of Judgment for each of the amended judgments. (*Id.* at ¶ 7, Ex. J.)

On October 5, 2006, Plaintiff filed another NFTL against Gershon Tannenbaum with the Kings County Register's office for the tax year ending December 31, 2002. (U.S. Moving L.R.

4

56.1(a) Statement ¶ 8, Aff. of Debt ¶ 9.) On November 3, 2006, another NFTL was filed against him for the tax years ending December 31, 2003 and 2004. (U.S. Moving L.R. 56.1(a) Statement ¶ 9, Aff. of Debt ¶ 10.)

On May 17, 2007, Plaintiff filed a complaint in this jurisdiction against Mr. Tannenbaum under § 7401 of the IRC "to reduce to judgment the assessed and unpaid federal income tax liabilities of Gershon Tannenbaum for the years ending December 31, 1987 through 1996, plus statutory accruals." (*United States v. Gershon Tannenbaum*, 07-cv-2038 (E.D.N.Y.).) The lawsuit concerned Mr. Tannenbaum's tax liabilities for the same time period at issue in the NFTLs that were filed in March and April of 1998 (the "1998 NFTLs") - the years ending 1987 through 1996. In October 2007, Plaintiff obtained a default judgment ("Default Judgment") in that lawsuit against Gershon Tannenbaum in the amount of $1,940,469.84 for his "assessments for federal income tax for years ending December 31, 1987 through December 31, 1996, plus interest from October 16, 2007." (Judgment, 07-cv-2038, ECF No. 6.) On December 27, 2007, Plaintiff filed a Notice of Abstract of Judgment for the Default Judgment with the New York City Department of Finance, Office of the City Register. (U.S. Moving L.R. 56.1(a) Statement ¶ 12, Ex. B.)

In August 2011, after Mr. Tannenbaum's mother's husband had died, ownership of the Condo passed to Sarah Tannenbaum and Mr. Tannenbaum's sister. (U.S. Resp. to Sarah Tannenbaum's R. 56.1 Statement § II ¶ 2.) In June 2012, Sarah Tannenbaum and Mr. Tannenbaum's sister sold the Condo for $700,000. (U.S. Resp. to Sarah Tannenbaum's R. 56.1 Statement § II ¶ 3; Chernoff Reply Decl., Ex. D at Real Property Transfer Report.) Sarah Tannenbaum received half of the sales proceeds, $350,000. (U.S. Memo. in Reply and Opp. to Sarah Tannenbaum Cross-Mot. for Summ. J. 8.) By the time of this sale, it had been 25 years

since Gershon Tannenbaum had begun to accumulate tax liabilities, and approximately four

years since Plaintiff had obtained the Default Judgment against him.

## **PROCEDURAL HISTORY**

On October 23, 2012, Plaintiff filed this lawsuit pursuant to §§ 7401, 7402, and 7403 of

the IRC. (Compl., ECF No. 1.) During a court conference, the attorneys for Plaintiff, the

Tannenbaums, and Sheldon had initially agreed that no discovery was needed because there were

no disputed issues of fact and that they would propose a briefing schedule for dispositive

motions. However subsequently, on August 21, 2013, Magistrate Judge Robert M. Levy granted

Plaintiff's request (ECF No. 24) to stay dispositive motion briefing in order to obtain discovery

about Sarah Tannenbaum's inheritance and sale of the Condo.

In moving for summary judgment, Plaintiff argues that under 26 U.S.C. §§ 6321, 6322,

and 6323, it has valid liens on the Home. It further argues that under 26 U.S.C. § 7403, Plaintiff

can secure a federal court order that enforces Plaintiff's liens by foreclosing on and selling the

Home, so long as the sale proceeds are split equally between Gershon Tannenbaum's creditors

and Sarah Tannenbaum. (Memo. of Law in Support of the United States' Mot. for Summ. J.

("U.S. Moving Memo. of Law"), ECF No. 40.) Plaintiff wants the Court to "determine and

adjudge that [it] has valid and subsisting federal tax liens and judgment liens on all property and

rights to property belonging to Gershon Tannenbaum, including his interest in [the Home]," and

to "issue an order of foreclosure and sale of [the Home], and that the net proceeds from sale, be

distributed 50-percent [each] to Mrs. Tannenbaum and to other creditors of Gershon

Tannenbaum, including [Plaintiff], in accordance with their relative lien priority status." (*Id.* at

14.) Plaintiff has submitted an Affidavit of Debt from an Internal Revenue Service ("IRS")

employee who has access to Gershon Tannenbaum's IRS records, and a Declaration from Ken

MacBride, a real estate broker, who determined the value of the Home by inspecting it from the outside. (Aff. of Debt; Decl. of Ken MacBride.)

Gershon Tannenbaum has not filed any responsive papers. Sarah Tannenbaum opposes Plaintiff's motion on the grounds that: selling the Home without her consent is impermissible under New York law because she co-owns the Home as a tenant by the entirety; she cannot afford a mortgage on a new home in the same neighborhood that is similar to the Home and outfit it to accommodate her wheelchair-bound mother who also lives in the Home; selling the Home would prejudice her mother who relies on social and medical services in that community; and selling the Home would also prejudice the families of patients at a nearby hospital and nursing home to the extent that the Tannenbaums provide the families with volunteer services in the Home. (Memo. of Sarah Tannenbaum in Opp. to Mot. and in Support of Cross-Mot. ("Sarah Tannenbaum Opp. and Cross-Mot. Memo."), ECF No. 42-3.) She has also cross-moved for summary judgment dismissal of the Complaint on the grounds that she is not liable for any federal taxes. (*Id.*) Sarah Tannenbaum offers her sworn affidavits as well as sworn affidavits from a neighborhood licensed real estate broker and the head of Volunteer Services of the nearby hospital. (Sarah Tannenbaum Reply Aff., Ex. A, Aff. of Douglas Jablon, Ex. B, Aff. of Abraham D. Katz.)

Sheldon has also cross-moved for summary judgment. He is not challenging Plaintiff's request for a foreclosure and sale of the Home. (Resp. to the United States Mot. for Summ. J. and David Sheldon's Memo. of Law in Support of his Cross-Mot. for Summ. J. 1, ECF No. 41.) Rather, he argues that under 26 U.S.C. § 6323(b)(8), his attorney's lien "enjoys super priority status" over Plaintiff's lien. (*Id.* at 3, 5.) He also argues that "[u]nder the law," without specifying any law, the federal tax liens that arose on the Home pursuant to the 1998 NFTLs are

limited to the amounts listed on the NFTLs, thereby leaving a portion of the creditors' fifty

percent share to be awarded to Sheldon to satisfy his judgment lien against Gershon

Tannenbaum. (*Id.* at 4, 5.) Sheldon argues that his judgment lien on the Home is worth

$144,524.09, a figure calculated by his attorney. (*Id.* at ¶ 10, Ex. K.) However, it is not clear

whether these calculations account for the fact that the Kansas Judgments are based on joint and

several liability, and that other Kansas Defendants have satisfied a portion of the Judgments. (*Id.*

at Ex. K.)

In response, Plaintiff argues that Sheldon's attorney's lien does not take priority, that

Sheldon does not have a valid judgment lien against Gershon Tannenbaum, and that Sheldon has

miscalculated the amount of his lien. (Memo. of Law in Opp. to David Sheldon's Cross-Mot. for

Summ. J., ECF No. 46.)  Sarah Tannenbaum has joined in Plaintiff's arguments regarding

Sheldon's judgment lien, and argues that satisfying Sheldon's judgment lien militates against the

sale of the Home because it would no longer be sold to satisfy Plaintiff's paramount interest in

collecting outstanding taxes. (Memo. of Sarah Tannenbaum in Reply to Opp. of Plaintiff and

Sheldon and in Further Support of her Cross-Mot. for Summ. J. 3-4, ECF No. 47.)

## DISCUSSION

Summary judgment is appropriate only when "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The moving party bears the burden of showing that there is no genuine issue of fact. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "In determining whether there is a genuine issue

of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving

party." *Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Ins. Co.*, 472 F.3d 33,

41 (2d Cir. 2006).  To oppose summary judgment, the non-movant must set out specific facts

showing that a genuine issue of material fact exists. *Id.* The non-movant cannot avoid summary judgment "through mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (internal quotation marks and citations omitted).

"Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014) (citation omitted). "And, of course, the court must determine whether the legal theory of the motion is sound." *Id.* "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented." *Vermont Teddy Bear Co., Inc. v. 1-800-Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (internal quotation marks and citation omitted).

## A. PLAINTIFF HAS VALID TAX AND JUDGMENT LIENS ON ALL PROPERTY AND RIGHTS TO PROPERTY BELONGING TO GERSHON TANNENBAUM

That Plaintiff has valid tax and judgment liens on Gershon Tannenbaum's property is undisputed. Under the Internal Revenue Code ("IRC"), a tax lien arises in the United States' favor on all the property of a delinquent taxpayer if the taxpayer fails to pay the delinquent amounts even after the United States makes a demand for it. 26 U.S.C. § 6321. The tax lien "arise[s]" when the United States makes the demand, called an "assessment," and "continue[s]" until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322.

Gershon Tannenbaum's federal tax liabilities are undisputed. He owes income taxes, accrued interest, and penalties for the tax years 1987 through 1996, and 2002 through 2004.

(U.S. Moving L.R. 56.1(a) Statement ¶¶ 1, 3; Pl. Aff. of Debt ¶¶ 3, 4.) It is also uncontested that assessments were made in 1997, 1998, 2002, and 2006, yet he failed to pay the delinquent amounts. (U.S. Moving L.R. 56.1(a) Statement ¶¶ 4, 5; Aff. of Debt ¶¶ 5, 6.) Consequently, on the date of each assessment, federal tax liens arose in Plaintiff's favor "upon all property and rights to property, ... belonging to" Gershon Tannenbaum in the amount of his tax liabilities. 26 U.S.C. §§ 6321, 6322.

The United States' tax lien "shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." 26 U.S.C. § 6321(a). Under subsection (f), a notice is valid if the United States files it "within the State ... in which the property subject to the lien is situated ...." 26 U.S.C. § 6323(f)(1)(A). The United States can also perfect a judgment lien "on all real property of a judgment debtor" by "fil[ing] a certified copy of the abstract of the judgment in the manner in which a notice of tax lien would be filed under section 6323(f) ...." 28 U.S.C. § 3201(a). A judgment lien arose in Plaintiff's favor against all of Gershon Tannenbaum's "real property" when a Notice of Abstract of Judgment for the Default Judgment was filed with the New York City Department of Finance, Office of the City Register, in December 2007. 28 U.S. C. § 3201(a). (U.S. Moving L.R. 56.1(a) Statement ¶ 12, Ex. B.)

**B.   A FORECLOSURE SALE OF THE HOME IS DECREED WITH HALF OF THE SALES PROCEEDS TO BE DISTRIBUTED TO SARAH TANNENBAUM**

Plaintiff is seeking an Order authorizing a foreclosure sale of the entire Home under § 7403. Section 7403(a) provides that Plaintiff can file a lawsuit to enforce its lien by "subject[ing] any property, of whatever nature," of the delinquent taxpayer to satisfy the outstanding tax liabilities. 26 U.S.C. 7403(a). Section 7403(b) provides that Plaintiff should

10

make a party to the lawsuit anyone with "any interest in the property" at issue. 26 U.S.C. §7403(b). Section 7403(c) further provides that a federal district court can "determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, ..., and a distribution of the proceeds of such sale according to the findings of the court ...." 26 U.S.C. § 7403(c). In the seminal case, *United States v. Rodgers*, the Supreme Court interpreted § 7403(c) "to contemplate, not merely the sale of the delinquent taxpayer's own interest, but the sale of the entire property (as long as the United States has any 'claim or interest' in it)...." 461 U.S. 677, 694 (1983). Otherwise, it held, why would subsection (b) require joining all interested parties to the United States' lawsuit. *Id.* at 692-93. The interest of any third party is recognized by "the mechanism of judicial valuation and distribution" to the third party of the sales proceeds. *Rodgers*, 461 U.S. at 694.

However, "§ 7403 does not require a district court to authorize a forced sale under absolutely all circumstances, and that some limited room is left in the statute for the exercise of reasoned discretion." 461 U.S. at 706, 711. In exercising this "limited discretion" to not compel a § 7403 sale, "a certain fairly limited set of considerations will almost always be paramount." *Id.* at 709-10. These "considerations" are: (1) "the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes[;]" (2) "whether the third party with a nonliable separate interest in the property would, in the normal course of events (leaving aside § 7403 and eminent domain proceedings, of course), have a legally recognized expectation that that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors[;]" (3) "the likely prejudice to the third party, both in personal dislocation costs and ... practical

undercompensation [;]" and (4) "the relative character and value of the nonliable and liable interests held in the property ...." *Rodgers,* 461 U.S. at 710-11.

These four factors are not intended to be "an exhaustive list" or a "mechanical checklist to the exclusion of common sense and consideration of special circumstances." *Id.* at 711. The *Rodgers* Court did "emphasize, however, that the limited discretion accorded by § 7403 should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *Id.* This discretion "should be exercised with a presumption in favor of sale." *Rodgers*, 461 U.S. at 706; *see also United States v. DiGiulio,* No. 95-CV-219S, 1997 U.S. Dist. LEXIS 19062, at *45 (W.D.N.Y. Nov. 5, 1997).

In moving for summary judgment, Plaintiff argues that the application of the *Rodgers* factors will show "that the level of hardship to Mrs. Tannenbaum from a sale of the entire Property does not outweigh the prejudice that the government will suffer if it is not allowed to sell the Property in its entirety." (U.S. Moving Memo. of Law 10.) Sarah Tannenbaum argues that the *Rodgers* factors militate against a § 7403 sale. She misconstrues the law on this issue by arguing that the Court is determining whether "to compel the sale of the Home ...." (Sarah Tannenbaum Opp. and Cross-Motion Memo. 6.) Rather, the inquiry here is whether the Court should exercise its "limited discretion" to not compel a § 7403 sale. *Rodgers*, 461 U.S. at 706; *United States v. Winsper*, 680 F.3d 482, 492 (6th Cir. 2012) ("the *Rodgers* factors ... address ... the *district court's* discretion *not* to foreclose") (emphasis in original).

The Court will next examine the *Rodgers* factors to make this determination.

## 1.    Financial Prejudice to the Government

The Court first considers "the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the

delinquent taxes." *Id.* at 710. Clearly, selling half a house is not a feasible option. Even if it was feasible to do so, selling only Gershon Tannenbaum's share in the Home would prejudice Plaintiff. Gershon Tannenbaum owes over $633,000 in unpaid income taxes alone, not including interest or penalties. (U.S. Moving Memo. of Law 2; U.S. Moving L.R. 56.1(a) Statement ¶ 1; Aff. of Debt ¶ 3.) The Home is estimated to sell at $1.2 million. (Decl. of Ken MacBride ¶ 8, ECF 40-3.) This estimate is uncontested. Plaintiff proposes to split the sales proceeds equally with Sarah Tannenbaum, leaving Plaintiff with approximately $600,000 which will not even satisfy Mr. Tannenbaum's outstanding tax payments, without consideration of the accrued interest and penalties, which combined total over $1.94 million through October 2007. (Judgment, *United States v. Tannenbaum,* No. 07-cv-2038.) This factor weighs in favor of Plaintiff.

Plaintiff also argues that if Gershon Tannenbaum dies before his wife, Plaintiff's lien interests in the Home will be extinguished (U.S. Moving Memo. of Law 11), which is an accurate assessment under New York law. *See Persky v. Persky*, 893 F.2d 15, 19 (2d Cir. 1989) ("Although a debtor tenant's interest is alienable, the value of that interest is problematical because if the non-debtor tenant survives the debtor, the non-debtor tenant acquires the entire fee and a purchaser takes nothing"). Plaintiff also makes the unsupported and uncontested argument that "it has no other meaningful source of collection," where any Social Security benefits that Gershon Tannenbaum may receive would be "negligible relative to the massive tax debt accumulated by Mr. Tannenbaum during the past 17 years." (U.S. Moving Memo. of Law 11.) Nonetheless, based on the fact that a partial sale, even if feasible, would prejudice Plaintiff, the Court finds that this factor weighs in favor of sale of the entire Home.

## 2.    A Legally Recognized Expectation That the Home
    Would not be Subject to a Forced Sale

In the case of marital property, "[t]he second *Rodgers* factor requires the Court to

consider whether the non-liable spouse had a legally recognized expectation that the property

would not be subject to a forced sale. This factor necessitates an inquiry into the nature of the

property interest under state law." *Rodgers*, 461 U.S. at 683. The Tannenbaums own the Home

as tenants by the entirety, a property right that is reserved for married couples under New York

State law. (Sarah Tannenbaum's Resp. to U.S.'s R. 56.1(a) Statement and Statement as to Facts

as to Which There is no Genuine Issue ¶ 8.) *VRW, Inc. v. Klein*, 68 N.Y.2d 560, 563 (N.Y. Ct. of

App. 1986); NY CLS EPTL § 6-2.2(b).

Sarah Tannenbaum does not have a legally recognized expectation that the Home would

not be subject to a forced sale. Under New York law, "it seems plain that the interest of a tenant

by the entirety is not exempt from sale and enforcement by execution." *Persky*, 893 F.2d at 19

(citing *Hiles v. Fischer*, 144 N.Y. 306 (1895); *Finnegan v. Humes*, 252 A.D. 385, 387 (1937),

*aff'd*, 277 N.Y. 682 (1938)). As far back as 1954, the Second Circuit has held that where a

"[h]usband and wife had an estate by the entirety under New York law, ... the husband's interest

[was] liable to be taken on execution (subject to her right of survivorship) and hence pass[ed] to

the trustee in bankruptcy." *Rothschild v. Lincoln Rochester Trust Company*, 212 F.2d 584, 585

(2d Cir. 1954) (citations omitted). Federal courts in New York have relied on the Second

Circuit's rulings in *Persky* and *Rothschild* to hold that a non-liable spouse does not have a legally

recognized expectation that property owned as tenants by the entirety would not be subject to a

forced sale to satisfy the liable spouse's tax liabilities. *United States v. Goldstein*, No. 03 Civ.

9316 (DAB), 2005 U.S. Dist. LEXIS 1922, at *7, *13, n.4 (S.D.N.Y. Feb. 9, 2005) (denied

defendants' motion to vacate default judgment in a suit under §§ 7401 and 7403 on the grounds that "New York law established that liens could attach to properties held as tenants by the entirety," and thus, defendants "could not have reasonably relied on the belief that New York state law prevented the attachment of a federal lien") (internal quotation marks and citations omitted); *United States v. Anderson*, No. 08-CV-6426-MAT, 2010 U.S. Dist. LEXIS 130831, at *9-*10 (W.D.N.Y. Dec. 10, 2010) (in finding that the second *Rodgers* factor weighed in favor of the United States, holding that "[u]nder New York law, a federal tax lien may attach to property held in a tenancy by the entirety, and this attachment has been held to negate the expectation that such property would not be subject to a forced sale") (internal quotation marks and citations omitted).

Sarah Tannenbaum argues, however, that "[i]t is well settled that a New York court cannot order the forced sale, or forced partition, of a property owned in a tenancy by the entirety, over the objection of either spouse." (Sarah Tannenbaum Opp. and Cross-Mot. Memo. 7.) But the cases that she cites to are inapposite because they concern the splitting of assets in divorce proceedings, not satisfying outstanding tax liens. *See Dimond v. Dimond,* 105 A.D.3d 891 (2d Dep't 2013); *Moran v. Moran,* 77 A.D.3d 443 (1st Dep't 2010); *Capurso v. Capurso,* 61 A.D.3d 913 (2d Dep't 2009); *Walker v. Walker,* 227 A.D.2d 469 (2d Dep't 1996). Her reliance on *VRW, Inc. v. Klein* is also misguided because *VRW* concerns determining a mortgagee's rights in a home after the couple had divorced, which divorce dissolved the tenancy by the entirety "by operation of law" to a simple tenancy in common. 68 N.Y.2d 560, 566 (N.Y. Ct. of Appeals 1986). (Memo. of Sarah Tannenbaum in Reply to Opp. of Pl. and Sheldon and in Further Support of Cross-Mot. for Summ. J. ("Sarah Tannenbaum Reply Memo.") 2.)

Sarah Tannenbaum also argues that a home "merits special constitutional protection." (Sarah Tannenbaum Opp. and Cross-Mot. Memo. 8.) But again, the cases that she relies upon are inapplicable because they concern the United States' seizure of homes purchased with proceeds from illegal drug transactions. *See United States v. Esposito*, 970 F.2d 1156 (2d Cir. 1992); *United States v. 4492 So. Livonia Road, Livonia, NY*, 889 F.2d 1258 (2d Cir. 1989). These cases have no bearing on the United States' "paramount interest" in collecting taxes or satisfying the United States' outstanding liens by selling the delinquent taxpayer's home.

This factor weighs in favor of sale of the Home.

### 3. Prejudice To Sarah Tannenbaum

"The third Rodgers factor requires that the Court evaluate the prejudice to the non-liable spouse in terms of personal dislocation and practical undercompensation." *Anderson*, 2010 U.S. Dist. LEXIS 130831, at *10 (citing *Rodgers*, 461 U.S. at 711). The *Rodgers* Court explained "practical undercompensation" as the possibility that the value of the nonliable spouse's interest would be less than the price demanded by the market for a lifetime's interest in an equivalent home." *Rodgers*, 461 U.S. at 704. Plaintiff argues this means whether the non-liable spouse will receive enough compensation from the sale to purchase or rent another place to live. (Memo. of Law in Further Support of the U.S.'s Mot. for Summ. J. and in Opp. to Sarah Tannenbaum's Cross-Mot. for Summ. J. ("U.S. Reply Memo.") 5-6.) A district court can also consider other factors to determine prejudice, such as the "actuarial calculations of the life expectancies of the spouses, respective contributions to the purchase price of the home, tax exemptions available on the property, prospects for acquiring a new home, special physical or mental handicaps, and minor children living at home." *Perksy*, 893 F.2d at 21.

There is no dispute that a non-liable party usually suffers some prejudice in having to relocate. Consequently, factors such as "typical relocation expenses," *Smith v. U.S.*, No. 3:11-CV-1996, 2014 U.S. Dist. LEXIS 29467, at *51 (D. Conn. Mar. 7, 2014), and "the inconvenience of ... relocating," if "no different from the inconvenience associated with any foreclosure sale," *United States v. Barr*, 617 F.3d 370, 376 (6th Cir. 2010), are alone insufficient for a finding of prejudice. Moreover, the "inherent indignity and inequity of being removed from one's home" is not enough to weigh this element in favor of the non-liable spouse, especially if there is no evidence that the non-liable spouse would be undercompensated after the property's sale. *United States v. Bierbrauer*, 936 F.2d 373, 375 (8th Cir. 1991) (internal quotation marks omitted); *United States v. Burtsfield*, 556 F.Supp.2d 1172, 1177 (D. Mont. 2008). Otherwise, "the government could never foreclose against a jointly owned residence—a result clearly untenable under § 7403. Rather, we think this third factor envisions some special circumstance of prejudice to the nonliable third party." *Bierbrauer*, 936 F.2d at 376; *Winsper*, 680 F.3d at 492; *see also United States v. Hipolito*, No. 3:13-CV-338, 2015 U.S. Dist. LEXIS 27529, at *16-*17 (M.D. Pa. Mar. 6, 2015).

In its moving papers, Plaintiff argued that since only the Tannenbaums occupy the Home and Sarah Tannenbaum will be adequately compensated for her interest with half of the sales proceeds, she will not suffer undue prejudice. (U.S. Moving Memo. of Law 12.) In response, Sarah Tannenbaum conceded that the Court may not find undue prejudice just because the Home has sentimental value to her; she raised children there and has built a community in that neighborhood. (Aff. in Opp. and in Support of Cross Motion ("Sarah Tannenbaum Opp. Aff.") ¶ 5.) She is correct. *See e.g.*, *Winsper*, 680 F.3d at 492 ("The hardship of having to leave a home with enormous sentimental value would not present special circumstances of prejudice that

17

weigh against foreclosure of the entire property"). Rather, she argues that the Home "is sufficiently unique and irreplaceable" because it has been outfitted to accommodate her elderly wheelchair-bound mother, who also lives in the Home. (Sarah Tannenbaum Opp. and Cross-Mot. Memo. 8-10; Sarah Tannenbaum Opp. Aff. ¶ 12; Sarah Tannenbaum Reply Aff. ¶ 15, Ex. B, Aff. of Abraham D. Katz.) Over $50,000 was used to make the Home wheelchair-accessible. (Sarah Tannenbaum Opp. Aff. ¶¶ 11-12; Aff. in Reply and in Further Support of Cross Motion ("Sarah Tannenbaum Reply Aff.") ¶ 15.) In Sarah Tannenbaum's sworn affidavits, she provides conflicting statements regarding the source of these funds – they came either from her "father's savings and holocaust survivor's funds" or her mother. (Sarah Tannenbaum Opp. Aff. ¶ 12; Sarah Tannenbaum Reply Aff. ¶ 15.) Nonetheless, she states that these funds are now gone. (Sarah Tannenbaum Reply Aff. ¶ 15.)

Sarah Tannenbaum also argues prejudice because her mother, who is Orthodox Jewish, relies on their Orthodox Jewish neighborhood service providers since they speak the same language (Yiddish) as her mother, share similar cultural practices, and know her mother's medical history. (Sarah Tannenbaum Opp. Aff. ¶¶ 17, 18.) There is "no other family to take her [mother] in." (Sarah Tannenbaum Reply Aff. ¶ 18.) Moreover, since the Home is walking distance from Sarah Tannenbaum's job, it permits her to tend to her mother as needed.

Sarah Tannenbaum further states that on her salary as a "Bookkeeper and Secretary," she cannot afford the mortgage on another house in the same neighborhood that would also be wheelchair-accessible and that nonetheless, houses rarely go on sale in her neighborhood. (Sarah Tannenbaum Opp. Aff. ¶¶ 9, 13, 14.) She financially supports her husband and mother with her job. (*Id.* at ¶ 21.) A licensed real estate broker who also lives in her neighborhood, Abraham D. Katz, states in his sworn Affidavit that there is little market turnover in that neighborhood and

that the Home is valuable because of its proximity to a nearby hospital. (Sarah Tannenbaum Reply Aff., Ex. B, Aff. of Abraham D. Katz.) Mr. Katz also describes the changes made to the Home to accommodate a wheelchair.

In response, Plaintiff argues that the proceeds from the Condo sale as well as the sale of the Home should suffice for Sarah Tannenbaum to find "replacement housing," that she does not need a house of equal size as the Home currently has four empty bedrooms, and that she can rent rather than buy a home. (U.S. Reply Memo. of Law 7-8.) Plaintiff also argues that Sarah Tannenbaum "is in an enviable position financially relative to the non-liable spouses whose homes have been subject to sale in analogous recent cases." (*Id.*) Plaintiff points to *United States v. Burtsfield*, where the non-liable spouse was 63 years old with "only a high school education" who had also been unemployed for the previous two years. 556 F.Supp.2d 1172, 1177-178 (D. Mont. 2008) (where the house was owned as a homestead interest). As is the case here, there was no evidence of undercompensation to that spouse from the sale of the home. The case is distinguishable because it did not involve a dependent, as is the case here. But the Court takes judicial notice that dire financial circumstances are not always found to be indicative of a "special circumstance of prejudice" to the non-liable spouse.

Sarah Tannenbaum does not dispute or even address any of Plaintiff's factual arguments. Rather in response, she only argues that in determining prejudice, the Court can consider the impact of the sale on her mother and the community because the Court can "consider intangible factors" and "other common sense special circumstances." (Sarah Tannenbaum Opp. and Cross-Mot. Memo. 3.) The Court agrees that it can consider the impact of the sale on her mother.

The Court sympathizes with Sarah Tannenbaum concerning the care of her mother. But the evidence does not support Sarah Tannenbaum's argument that she is short on resources.

First, her financial resources are not limited to her salary, an amount that she has not disclosed. According to evidence that Plaintiff presented to the Court, in 2012, Sarah Tannenbaum and her sister-in-law, Gershon Tannenbaum's sister, sold the Condo which they inherited from Gershon Tannenbaum's mother for $700,000. (U.S. L.R. 56.1(a) Statement of Additional Undisputed Material Facts ¶¶ 1-3; Chernoff Reply Decl., Ex. C and D.) Sarah Tannenbaum received half of the sales proceeds, $350,000. Sarah Tannenbaum does not dispute these facts. (Sarah Tannenbaum Resp. to Pl.'s R. 56.1(a) Statement and Statement as to Facts as to Which there is no Genuine Issue ¶ 1.) And despite submitting two sets of briefs, she does not mention whether the Tannenbaums explored either housing her mother in the Condo, which is located close to the Home, or alleviating her husband's outstanding tax liabilities with the Condo sales proceeds.

Nonetheless, her share of the Condo sales proceeds, $350,000, plus the approximately $600,000 that she is anticipated to receive from the sale of the Home, mean that Sarah Tannenbaum will have $950,000 to lease or buy another home that can accommodate the Tannenbaums and Sarah Tannenbaum's mother. Although neither side presented any evidence of the cost of leasing or buying an apartment or house in this neighborhood, the Court finds that $950,000 should suffice where the Tannenbaums can look for a smaller home, and the amount is not far off from the $1.2 million estimated market value of the Home. The Court is not aware of any controlling law, nor does Sarah Tannenbaum bring any to the Court's attention, holding that a non-liable party is prejudiced if that party has to lease rather than buy a home.

Second, the Tannenbaums do not have to stay in this neighborhood. As Sarah Tannenbaum acknowledges, there are other Orthodox Jewish neighborhoods in the same borough where the Tannenbaums currently live – Brooklyn, New York.

Third, she also has the resources to minimize the disruption of relocating on her mother. There is a large nursing home in the neighborhood and Sarah Tannenbaum's three grown children also live in the same neighborhood. (Sarah Tannenbaum Resp. to Pl.'s R. 56.1(a) Statement and Statement as to Facts as to Which there is no Genuine Issue ¶ 14; Sarah Tannenbaum Opp. Aff. ¶ 20.)

The fact that Sarah Tannenbaum has the resources to minimize the prejudice to her and her mother from a sale of the Home distinguishes this case from others where courts were hesitant to decree a § 7403 sale of a home, owned as a tenant by the entirety, because the non-liable spouse had limited resources and young children. In *United States v. Jones*, the Court denied the United States' request to order a foreclosure sale of the home owned as tenants by the entirety, in part because the non-liable spouse had never been employed and also had a minor son living in the house. 877 F.Supp. 907, 918 (D.N.J. 1995). It did grant the United States' summary judgment motion to the extent that the United States sought payment from the non-liable spouse of "one-half the imputed rental value of the property" to be credited against the other spouse's liabilities. *Id.* at 920; *see also United States v. Cardaci*, No. 12-cv-5402, 2013 U.S. Dist. LEXIS 154823, at *27-*28 (D.N.J. Oct. 29, 2013) (denying both parties' summary judgment motions and scheduling a hearing on the grounds that there was insufficient evidence to determine prejudice to the non-liable spouse, where the Court lacked information on the assets or income of the three adult children also living in the house with a child, and whether two more children had moved into the house).

Ultimately, the facts that support a finding of a special circumstance of prejudice to Sarah Tannenbaum are neutralized by the facts showing that she has the resources to minimize such prejudice. This factor weighs in favor of a sale.

21

### 4. Prejudice to the Community

Sarah Tannenbaum also argues that the Home is "irreplaceable to the community" because the Tannenbaums provide four empty bedrooms and meals in the Home, at no cost, to families of patients at a nearby hospital and nursing home. (Sarah Tannenbaum Resp. to Pl.'s R. 56.1(a) Statement and Statement as to Facts as to Which there is no Genuine Issue ¶¶ 13-15; Sarah Tannenbaum Opp. Aff. ¶¶ 22-32; Sarah Tannenbaum Reply Aff., Ex. A, Aff. of Douglas H. Jablon in Support of Sarah Tannenbaum.) These services help those families when local restaurants are closed and the families cannot travel due to religious restrictions. (*Id.*)

Mr. Jablons, Senior Vice President and head of Volunteer Services at the nearby hospital, states in a sworn Affidavit that the Tannenbaums offer these services. (Sarah Tannenbaum Reply Aff., Ex. A, Aff. of Douglas H. Jablon in Support of Sarah Tannenbaum.) But he does not characterize their services as "irreplaceable." Rather, he states that "[a] number of religious organizations" and other members of the community also provide free lodging to accommodate these families. (*Id.*) Consequently, the Tannenbaums are not the only resource in this neighborhood of such services. Moreover, nothing prevents the new owners of the Home from offering these services.

The Court is also not persuaded that charitable services should be offered at the expense of tax liabilities that have been outstanding for almost thirty years. Sarah Tannenbaum cites to no supporting law for this proposition. This factor weighs in favor of sale.

### 5. Relative Value Of Liable And Non-Liable Interests

This factor is neutral because the relative value of the liable and non-liable interests here are 50/50. "[T]he values of Mr. and Mrs. Tannenbaum's individual interests in the Property are equal to 50% of the fair market value ...." (U.S. Moving Memo. of Law 14.) Plaintiff relies on

IRS guidance and federal common law for its position. (U.S. Reply Memo. 10-11.) Collection

Issues Related to Entireties Property, Internal Revenue Service Notice 2003-60, Sept. 29, 2003,

at Overview, (5) and (6); *Popky v. U.S.*, 326 F.Supp.2d 594, 602 (E.D. Pa. 2004). Sarah

Tannenbaum agrees: "[t]he liable and non-liable interests of the Tannenbaums are relatively

equal. This factor is, therefore, neutral." (Sarah Tannenbaum Opp. Memo. 10.) An equal split

is also consistent with New York state law: "the husband and wife have equal rights, with respect

to the use and control of an estate by the entirety and to the rents and profits thereof during

coverture ...." *Lopez v. McQuade*, 151 Misc. 390, 392 (Supr. Ct. Kings Cty. 1934).

After examining the *Rodgers* factors and other common sense considerations, the Court

will not exercise its "limited discretion" under *Rodgers* to not decree a sale under § 7403.

Plaintiff's summary judgment motion is GRANTED to the extent that it seeks to foreclose on

and sell the Home, with half of the sales proceeds to be distributed to Sarah Tannenbaum and the

other half to be distributed to Gershon Tannenbaum's lienholders.

## C. SARAH TANNENBAUM'S CROSS-MOTION FOR SUMMARY JUDGMENT IS DENIED

With no supporting legal argument, Sarah Tannenbaum makes the single assertion that

she is cross-moving for summary judgment dismissal of the complaint against her because she

does not owe federal taxes. (Sarah Tannenbaum Opp. and Cross-Mot. Memo. 1.) Her request

for relief is denied as Plaintiff is required to name her, and any other party that may have an

interest in the Home, as a defendant before obtaining an Order authorizing sale of the Home. 26

U.S.C. § 7403(b).

## D.  SHELDON'S ATTORNEY'S LIEN DOES NOT RECEIVE PRIORITY OVER ANY FIRST-FILED LIEN IN PLAINTIFF'S FAVOR

Sheldon argues that under 26 U.S.C. § 6323(b)(8), "the federal tax liens and judgments are subordinate" to his attorney's lien.[2] (Resp. to the U.S. Mot. for Summ. J. and David Sheldon's Memo. of Law in Support of his Cross-Mot. for Summ. J. 5.) Sheldon retained an attorney to represent him in the Kansas litigation on a contingency basis; Sheldon also agreed to pay the attorney "50% of any judgment...." (David Sheldon's L.R. 56.1(a) Statement, Ex. B at ¶¶ 2, 4, ECF No. 41.) Sheldon argues that his attorney has a charging lien and a contractual lien under New York law.

"Federal law determines the relative priority of a federal tax lien.... Federal law follows the common law rule that a lien first in time is the first in right, .... [u]nless the defendants can identify an applicable exception or overriding principle ...." *United States v. Ripa*, 323 F.3d 73, 80 (2d Cir. 2003) (internal quotation marks and citations omitted). One "applicable exception" is § 6323(b)(8), which provides when an attorney's lien can take priority over a first-filed federal tax lien:

> Even though notice of a lien imposed by Section 6321 has been filed, such lien shall not be valid - With respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, under local law, holds a lien upon or a contract enforceable against such judgment or amount, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement, except that this paragraph shall not apply to any judgment or amount in settlement of a claim or of a cause of action against the United States to the extent that the United States offsets such judgment or amount against any liability of the taxpayer to the United States.

---

[2]  Sheldon appears to be arguing that all of Plaintiff's liens were filed before his attorney's lien arose. He does not ask the Court to determine, nor therefore will the Court determine, which if any of Plaintiff's liens were first-filed.

26 U.S.C. § 6323(b)(8). Under federal common law, the following conditions must be met for the application of § 6323(b)(8): "(1) that a fund was created out of a judgment or settlement of a claim …; (2) that local law would recognize the existence of a lien, …; and (3) that the amount of the lien reflects the extent to which the attorney's efforts reasonably contributed to the award." *United States v. New York State Dep't of Taxation & Finance*, 138 F.Supp.2d 392, 397 (W.D.N.Y. 2001) (internal quotation marks and citations omitted), *aff'd*, 323 F.3d 73 (2d Cir. 2003).

The Second Circuit has held that "the primary purpose of the statute was to collect taxes, not bestow benefits on attorneys.… Congress intended § 6323(b)(8) to encourage attorneys to bring suits and obtain judgments that would put their clients in a position to be better able to pay their tax liabilities." *Ripa*, 323 F.3d at 83 (internal quotation marks and citations omitted); *see also Hill, Christopher and Phillips, P.C. v. U.S. Postal Service*, 535 F.Supp. 804, 809 (D. of Columbia 1982). Therefore, "the attorney receives no protective consideration for his efforts on behalf of a client with a tax liability, if the funds to satisfy that liability are going to come from a judgment against the Government." *Ripa*, 323 F.3d at 83 (citing *Hill, Christopher and Phillips, P.C.*, 535 F.Supp. at 809); 26 U.S.C. § 6323(b)(8).

Consequently, § 6323(b)(8) is applicable only where the attorney obtains a judgment for the delinquent taxpayer, not against the taxpayer. *Park City Leasing, Inc. v. V.I.P. Mobile Phone Centers, Inc.*, 763 F.Supp. 140 (E.D. Pa. 1991); *Reed & Stevens d/b/a Storm Partners v. HIP Health Plan of Florida, Inc.*, 81 F.Supp.2d 1335, 1338 (S.D. Fla. 1999). In *Park City Leasing, Inc. v. V.I.P. Mobile Phone Centers, Inc.*, the Court held that the attorney's lien did not enjoy superpriority status under § 6323(b)(8) over the United States' first-filed tax lien because the

attorney represented a private party against the delinquent taxpayer, the attorney did not represent or obtain a judgment on behalf of the taxpayer. 763 F.Supp. at 142-43.

Similarly here, Sheldon's attorney's lien does not take priority over any first-filed lien by Plaintiff because Sheldon secured a judgment against Gershon Tannenbaum, thereby reducing the amount of funds available to the government to satisfy its tax claim against Mr. Tannenbaum. (David Sheldon's L.R. 56.1(a) Statement, Ex. C.) It would run contrary to the very purpose of § 6323(b)(8) to grant Sheldon's attorney's lien superpriority status. Accordingly, § 6323(b)(8) is inapplicable. *Park City Leasing, Inc.*, 763 F.Supp. at 142; *Ripa*, 323 F.3d at 81 n.8. The case that Sheldon relies on does not rescue his claim because there, the attorney represented the delinquent taxpayer unlike here, where Sheldon sued the delinquent taxpayer. *United States v. $319,000 in U.S. Currency*, 634 F.Supp. 700, 703 (N.D. Ga. 1986). Therefore, Sheldon's attorney's lien does not take superpriority status over Plaintiff's first-filed liens. Sheldon's cross-motion seeking summary judgment on this issue is DENIED.

### E.   GERSHON TANNENBAUM'S TAX LIABILITIES FOR THE YEARS 1987 THROUGH 1996 ARE NOT LIMITED TO THE AMOUNTS LISTED IN THE 1998 NOTICES OF FEDERAL TAX LIENS

Sheldon argues that to satisfy his judgment lien against Gershon Tannenbaum, Sheldon is entitled to $144,524.09 from Plaintiff's share of the Home sales proceeds. (Resp. to the U.S. Mot. for Summ. J. and David Sheldon's Memo. of Law in Support of his Cross-Mot. for Summ. J. 4, 5.) Sheldon concedes that Plaintiff's 1998 NFTLs are first-filed before the judgment lien that Sheldon filed in 2002, and, therefore, take priority over that judgment lien. But he argues that the amount of Plaintiff's liens are limited to the amounts listed in the 1998 NFTLs - $238,412 and $1,742.36.[3] (*Id.* at 4; David Sheldon L.R. 56.1(a) Statement ¶ 15, Ex. N.) Sheldon

---

[3]     Sheldon incorrectly states that Plaintiff filed a NFTL on April 4, 1998. (David Sheldon L.R. 56.1(a) Statement ¶ 15.) The correct date is March 4, 1998. (David Sheldon L.R. 56.1(a) Statement, Ex. N.)

appears to be arguing that, therefore, there will be money remaining from the creditors' share to satisfy his judgment lien against Gershon Tannenbaum.

But Sheldon is wrong because the amount of Plaintiff's liens is not limited to the amounts listed in the 1998 NFTLs. Under § 6321 of the IRC, Gershon Tannenbaum's federal tax liabilities include not just his unpaid taxes, but also any "interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto." 26 U.S.C. § 6321. The interest and penalties accrue until judgment has been entered, unless the liability has already been paid. That amount has already been determined to be $1,940,469.84 million through October 2007. (Judgment, *United States v. Gershon Tannenbaum*, No. 07-cv-2038.) The Default Judgment setting forth that amount covered the same time period covered by the 1998 NFTLs – 1987 through 1996. Plaintiff calculated his tax liabilities consistent with § 6321 to include interest and penalties through December 2007. (*Id.*) Having been determined and ordered by the Court in the Default Judgment, the amount is not in dispute.

Consequently, even assuming that Sheldon has a valid judgment lien against Gershon Tannenbaum for $144,524.09, since Mr. Tannenbaum's tax liabilities are far greater than the $600,000 that will remain after Mrs. Tannenbaum receives half of the Home sales proceeds, Sheldon is not entitled to receive any portion of those proceeds. The Court, therefore, sees no reason to address Plaintiff's arguments that Sheldon has not perfected his judgment lien against Gershon Tannenbaum or that Sheldon has miscalculated the amount at issue in his judgment lien. (Memo. of Law in Opp. to David Sheldon's Cross-Motion for Summary Judgment 3-6, 8-11.) Sheldon's cross-motion for summary judgment on the priority of his judgment lien is DENIED.

## CONCLUSION

Plaintiff's motion for summary judgment is granted. The Clerk of Court should enter judgment for Plaintiff that:

- Plaintiff has valid federal tax and judgment liens on all property and rights to property belonging to Defendant Gershon Tannenbaum, including Gershon Tannenbaum's interest in the property located at 927 51st Street, Brooklyn, New York; and

- Plaintiff can foreclose on and sell the property located at 927 51st Street, Brooklyn, New York, and distribute fifty percent of the sales proceeds to satisfy the United States' liens against Defendant Gershon Tannenbaum, and distribute fifty percent of the sales proceeds to Defendant Sarah Tannenbaum.

Defendant Sarah Tannenbaum's cross-motion for summary judgment is denied. Defendant David Sheldon's cross-motion for summary judgment is also denied. This Memorandum and Order resolves Plaintiff's summary judgment motion and opposition to Defendants Sarah Tannenbaum's and David Sheldon's cross-motions for summary judgment (ECF Nos. 40, 45, 46), Defendant Sarah Tannenbaum's opposition to Plaintiff's and David Sheldon's motions as well as her cross-motions for summary judgment (ECF Nos. 42, 47), and Defendant David Sheldon's cross-motion for summary judgment (ECF Nos. 41, 44, 48).

The Clerk of Court is directed to close this case.


**SO ORDERED.**

/s/ *Sandra L. Townes*
_____
SANDRA L. TOWNES
United States District Judge


Dated: August _10_ , 2016
Brooklyn, New York